

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Calvin Compton (#B-38874),         )
                                  )
        Plaintiff,          )
                                  )    **No. 11 C 1974**
                                  )
                                  )    **Hon. Charles R. Norgle**
Sherwin K. Miles,             )
                                  )
        Defendant.        )

## MEMORANDUM OPINION AND ORDER

The plaintiff, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendant, a counselor at the Stateville Correctional Center, violated the plaintiff's constitutional rights by discriminating against him on the basis of his race. More specifically, the plaintiff alleges that he was denied a furlough to attend his mother's funeral because he is African American. This matter is before the court for ruling on the defendant's motion for summary judgment. For the reasons stated in this order, the motion is granted.

## I. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of*

*Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## Local Rule 56.1 (N.D. Ill.)

The defendant filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with her motion for summary judgment, the defendant included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [document no. 47], as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

2

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, the plaintiff failed to file a proper response to the defendant's statement of uncontested facts. In his opposing brief, the plaintiff broadly disputes some of the defendant's contentions; however, he provides no evidence whatsoever to support his claim. A motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). Statements in a brief are not evidence and are not entitled to any evidentiary weight. *See, e.g., Topi v. Mukasey* 264 Fed. Appx. 504, 506 (7th Cir. 2008); *Wilson v. Hosey*, No. 09 C 7777, 2012 WL 957488, *7 (N.D. Ill. Mar. 15, 2012) (Norgle, J.) (citations omitted).

Because the plaintiff is proceeding *pro se*, the court will grant him considerable leeway and take into account the factual assertions he makes in his summary judgment materials. However, the court will entertain the plaintiff's factual statements only insofar as he could properly testify about the matters asserted. *See* Fed. R. Evid. 602.

Given the considerations stated above, the court views the defendant's Rule 56.1 statements supported by the record and not properly rebutted by the plaintiff to be true and uncontested. [In order to meet its obligation to view the record in the light most favorable to the non-movant, the court has supplemented the defendant's statement of facts with additional facts the plaintiff asserted during his deposition]:

## II. FACTS AND BACKGROUND

The plaintiff, Calvin Compton, is an Illinois state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Amended Complaint, doc. number 32, at p. 2.). The plaintiff is black. (*See* Illinois Department of Corrections website, http://222.2/Illinois.gov/idoc/Offender/Pages/InmateSearch.aspx. The defendant, Sherwin Miles, is a correctional counselor at Stateville. (Defendant's Exhibit B, Affidavit of Sherwin Miles, ¶ 1.)

The plaintiff's mother passed away on June 8, 2012. (Amended Complaint, ¶ 1; Defendant's Exhibit C, Deposition of Calvin Compton, at p. 5.) The plaintiff contacted the defendant to learn how he could attend his mother's funeral. (Amended Complaint, ¶ 1; *see also* Miles Affidavit, ¶ 9.) The defendant informed the plaintiff that his family would have to call the prison's Clinical Services Department to provide certain information relating to the funeral. (Amended Complaint, ¶ 2; Plaintiff's Dep., pp. 32, 37, 38, and 41; Miles Affidavit, ¶ 9.) A correctional officer likewise told the plaintiff that "his people," rather than the plaintiff himself, had to make the necessary arrangements.

(Plaintiff's Dep. pp. 9, 11.) The plaintiff called his sister the next day and told her that she needed to coordinate with the prison. (*Id.*, p. 12.)

Information regarding requests for funeral furloughs is provided to Stateville inmates by way of their Offender Orientation Manual. (Miles Affidavit, ¶ 2.) Requests for funeral furloughs must be directed to the Clinic Services Department. (*Id.*, ¶ 3.) The inmate's family must contact the Clinical Services Department with the name of the funeral home and other details. (*Id.*, ¶ 4.) Counselors are not authorized to rely on information received from an inmate about a death in the family. (*Id.*, ¶ 10.) Any individual working in the Clinical Services Department can assist the family member who calls to request that an inmate be permitted to attend a funeral. (*Id.*, ¶ 5.)

Upon receipt of the required information, the Clinical Services Department verifies the funeral information, then forwards the request to the warden (or his designee). (*Id.*, ¶ 6.) The warden then advises the family of his final decision. (*Id.*, ¶ 7.) If the request for a funeral furlough is approved, the family is advised how much they must pay to cover the cost of transporting the inmate to the funeral. (*Id.*, ¶ 8.) As a counselor, defendant Miles has no authority to make final decisions relating to funeral furloughs. (*Id.*, ¶ 7.)

Although the plaintiff verbally asked the defendant about obtaining a funeral furlough, no member of the plaintiff's family ever contacted her. (*Id.*, ¶ 11.) Because the defendant never received the required information from the plaintiff's family, she never filled out a "Death Information Form" for the plaintiff to attend his mother's funeral. (*Id.*) No family member could have spoken to the defendant on June 12, 2010, because the defendant does not work on Saturdays. (*Id.*, ¶ 12.) The plaintiff admits that he never specifically told his sister to call the Clinical Services Department. (Plaintiff's Dep., pp. 40-41.) The defendant did apparently receive a telephone message to call the

5

plaintiff's sister, but because the note did not explain the reason for her to call, the defendant declined to return the call. (*Id.*, pp. 33-36.)

The plaintiff has no written denial from the defendant (*id.*, p. 60), but points out that there is no paperwork indicating that the defendant started the furlough process, either. (*Id.*, pp. 60-61.) The plaintiff believes that the defendant took it upon herself to deny the funeral furlough without referring the matter to the warden, as she should have done. (*Id.*, p. 61.)

The plaintiff testified at his deposition that it was his understanding that he was unable to attend his mother's funeral only because he was [wrongfully] considered a high escape risk, and "[t]here was no other reason." (Plaintiff's Dep., pp. 29, 46.) When the plaintiff encountered the defendant and confronted her about his being considered an escape risk, she told him that she had never spoken to his family. (*Id.*, pp. 30-31, 33.) She again directed the plaintiff to have his family call the Clinical Services Department. (*Id.*, p. 38.) In response to a later grievance, the grievance officer confirmed for the plaintiff that he was not classified as a high risk inmate. (*Id.*, p. 54.)

The plaintiff can recall a few "white guys" and a "couple black guys" being granted funeral furloughs since 2003. (*Id.*, p. 48.) In the plaintiff's recollection, "they was denying a lot of guys to go, but there was not one white guy that was denied that I knew." (*Id.*, p. 48.) The plaintiff is unsure why any black inmates were denied funeral furloughs, but he knew that they were not considered high escape risks because they did not wear red identification tags. (*Id.*, p. 49.) The plaintiff does not understand how white inmates who are serving a natural life sentence, like he is, have been granted funeral furloughs, unless they have political connections. (*Id.*, pp. 49-50.) The plaintiff has no proof that black inmates are regularly denied funeral furloughs, although he is certain that such documentation exists. (*Id.*, pp. 58-60.)

### III. <u>ANALYSIS</u>

There is no genuine issue as to any material fact, and the court finds that the defendant is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could conclude that he was the victim of race discrimination. Rather, the record reflects that the plaintiff's family failed to take the proper steps to arrange for a funeral furlough. Accordingly, the defendant's motion for summary judgment is granted.

Inmates have no constitutional right to attend a family member's funeral. *See, e.g., Merritt v. Broglin*, 891 F.2d 169, 174 (7th Cir. 1994); *Brooks v. Nash*, No. 92 C 0243, 1993 WL 266526, *3 (N.D. Ill. Jul. 15, 1993) (Aspen, J.); *Rowell v. Elrod*, No. 84 C 1405, 1985 WL 1045, *1 (Apr. 30, 1985) (Grady, J.). Nevertheless, prison officials may not grant benefits or impose burdens based on impermissible factors, such as race. *See, e.g., Johnson v. California*, 543 U.S. 499 (2005) (prison could not make housing assignments based on race); *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701 (2007) (student assignment plan that relied on racial classification to allocate slots in oversubscribed high schools did not survive constitutional scrutiny).

In the case at bar, the record is entirely devoid of evidence of racial discrimination. "A plaintiff asserting an equal protection violation must establish that a state actor has treated him differently than persons of a different race and that the state actor did so purposefully." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citing *Washington v. Davis*, 426 U.S. 229, 239-42 (1976); *Indianapolis Minority Contractors Ass'n., Inc. v. Wiley*, 187 F.3d 743, 752 (7th Cir. 1999)); *see also Banks v. Almazar*, No. 07 C 5654, 2011 WL 1231142, *13 (N.D. Ill. Mar. 30, 2011) (Dow, J.). Here, the defendant has submitted a sworn affidavit stating that the plaintiff's family (a) never spoke to her, and (b) failed to contact the Clinical Services Department to make funeral arrangements, as required to start the process. Indeed, the plaintiff concedes both points. The defendant has demonstrated that

the furlough was denied--or, more precisely, the approval process was not initiated--because the plaintiff's family did not follow proper procedures for making a formal request.

The plaintiff nevertheless insists that the fault lies with the defendant, who failed either to return his family's call or to fill out the necessary paperwork. Certainly, the defendant might have been more sympathetic and more proactive in response to hearing about a death in the plaintiff's family. But the fact remains that the plaintiff's family did not reach out to the appropriate department. The defendant specifically told the plaintiff, on at least two separate occasions, that his family needed to contact the Clinical Services Department, those instructions were admittedly not followed.

According to the plaintiff, the defendant told his sister that she (the defendant) did not think the plaintiff would be permitted to attend the funeral because he was classified as "high risk." *See* Plaintiff's Deposition, pp. 15, 21. However, that assertion is inadmissible hearsay--in fact, hearsay twice over. *See* Fed. R. Evid. 802 (hearsay is inadmissible in court, with certain exceptions). The defendant has submitted an affidavit expressly denying that any member of the plaintiff's family contacted her, and that she was not even working on the date of the alleged telephone conversation. The plaintiff cannot counter the defendant's affidavit by testifying as to what she supposedly told a third party. *See* Fed. R. Evid. 602. ("a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). The plaintiff's second-hand report of his sister's conversation with someone she believed to be the defendant is insufficient to controvert the defendant's sworn statement that she never spoke with the sister.

In any event, the purported speculation by the defendant or another counselor that the plaintiff probably would not be approved for a funeral furlough does not reflect racial animus. First, the warden, and not a counselor, is responsible for deciding whether to grant an inmate leave to attend a funeral. Second, the plaintiff stated throughout his deposition that he was informed that he had been

8

denied a funeral furlough solely because he was considered a high-risk inmate. A decision based on an inmate's high escape risk classification is not race-related.

The plaintiff contends that, through discovery, he could substantiate his claim of discrimination by showing that the defendant has processed funeral furlough requests by white and latino inmates, but not black inmates. However, the plaintiff never availed himself of the discovery process, and it is too late to do so now, as discovery closed in April 2012. *See* Minute Entry of March 28, 2012; Defendant's Reply Brief at p. 3. As noted *supra*, a motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Eberts*, 569 F.3d at 767; *Flournoy v. Schomig*, 418 Fed. Appx. 528, 532 (7th Cir. 2011) (ruling that summary judgment was properly granted where plaintiff failed to point to any evidence to support his discrimination claim). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The plaintiff's general impression that other inmates' requests for compassionate leave are treated more favorably than black inmates' requests is insufficient for the matter to go to a jury. In the absence of any evidence whatsoever to support the plaintiff's charge of discrimination, his claim cannot proceed.

In sum, there is no genuine dispute as to any material fact, and the court concludes that the defendant is entitled to judgment as a matter of law. The plaintiff has failed to come forth with any evidence to support his discrimination claim; no triable issue exists as to whether he was denied a funeral furlough because he is black. Accordingly, the defendant's motion for summary judgment is granted.

If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [#45] is granted. The clerk is directed to enter judgment in favor of the defendant pursuant to Fed. R. Civ. P. 56. The case is terminated.

Charles R. Norgle
United States District Judge

Date: 9-5-12

10